ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| GRISEL OLMEDA DELGADO; JESÚS ALBERTO MADERA<br><br>Recurridos<br><br>v.<br><br>CAROLYN OCASIO AGOSTO<br><br>Peticionaria | KLCE202400244 | *Certiorari* procedente del Tribunal de Primera Instancia, Salas de Relaciones de Familia y Asuntos de Menores, Sala Superior de Humacao<br><br>Caso Núm.: HSRF201900223<br><br>Sobre: Relaciones Abuelo-Nietos |

Panel integrado por su presidenta, la Jueza Romero García, la Jueza Martínez Cordero y el Juez Pérez Ocasio.[1]

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de marzo de 2024.

Comparece la señora Carolyn Ocasio Agosto (en adelante, señora Ocasio Agosto, peticionaria y/o madre) mediante un recurso de *Certiorari* para solicitarnos la revisión de la *Resolución* emitida el 24 de enero de 2024, y notificada el 29 de enero de 2024, por el Tribunal de Primera Instancia, Sala Superior de Humacao (en adelante, TPI).[2] Mediante la *Resolución* recurrida, el foro primario acogió el Informe Social Forense rendido el 22 de noviembre de 2023. Por consiguiente, dictó *Resolución* de conformidad en la que hizo constar que las relaciones entre los abuelos y su nieto continuarían según establecidas en el año 2020.

Por los fundamentos que expondremos, se expide el auto de *Certiorari*, se *modifica* la *Resolución* recurrida y así modificada, se

---

[1] Mediante la Orden Administrativa OATA-2023-201 de 28 de noviembre de 2023, se designó al Hon. Alberto L. Pérez Ocasio para entender y votar, en sustitución del Hon. Juan R. Hernández Sánchez.
[2] Apéndice de la peticionaria, a las págs. 128-129.

Número Identificador

SEN2024_____

*confirma.* Además, se devuelve al foro primario para que calendarice la celebración de una vista evidenciaria.

**I**

El caso de autos tuvo su génesis tras la presentación una acción civil presentada por la señora Grisel Olmeda Delgado y el señor Jesús Alberto Madera (en adelante, abuelos paternos y/o recurridos), contra la señora Ocasio Agosto con el fin de que los primeros pudiesen relacionarse con su nieto, D.M.O. (en adelante, menor). Los recurridos son los abuelos paternos del menor, mientras que la peticionaria es la madre del menor. Según se desprende de los autos, el padre del menor falleció.

Con relación a la referida acción civil, el foro primario, luego de haberse rendido un Informe Social, allá, para el 30 de octubre de 2020, emitió una *Orden,*[3] mediante la cual estableció relaciones entre los abuelos paternos y su nieto de la siguiente forma:

> Se establece relaciones abuelo filiales los domingos alternos sin pernoctar. La Sra. Carolyn Ocasio, madre del menor, entregará al menor D.M.O. a la Sra. Grisel Olmeda y el Sr. Jesús Olmeda, abuelos paternos, en el Walgreens de Las Piedras a las 11:00 a.m. y recogerá al menor a las 6:00p.m.
> […]
> Se ordena a las partes continuar recibiendo ayuda terapéutica individual y familiar con la Dra. Frances Fernández, Psicóloga Clínica, con el propósito de obtener destrezas de comunicación asertiva manejo de emociones y lidiar con estresores familiares.
>
> Se realizará revisión en un periodo de 12 meses para la posible ampliación de las relaciones abuelo filiales.

Transcurridos casi tres (3) años, el 4 de agosto de 2023, la parte recurrida presentó una *Moción en Solicitud de Ampliación de las Relaciones Abuelo-Nieto.* En su escrito los abuelos solicitaron que el caso fuese referido a la Unidad Social y que se establecieran relaciones entre estos y el menor en fines de semana.[4]

---

[3] *Id.,* a la pág. 23.
[4] Véase escrito sin título, presentado ante esta Curia por la señora Ocasio Agosto el 12 de marzo de 2024, al cual acompañó el escrito de referencia, en cumplimiento con lo ordenado por este Tribunal.

De ahí, el 8 de agosto de 2023, el TPI emitió una *Orden*.[5] En dicha *Orden*, le ordenó a la trabajadora social de la Unidad Social de Relaciones de Familia y Asuntos de Menores (en adelante, Unidad Social) a realizar orientación sobre relaciones filiales, una evaluación y a emitir un Informe Social.[6]

Así las cosas, el 22 de septiembre de 2023, la señora Ocasio Agosto presentó *Extremadamente Urgente Moción en Solicitud de que se Detenga Informe Social en Curso y Permanezcan las Relaciones Abuelo-Nieto como Establecidas al Momento*.[7] Expuso que los abuelos ya se relacionaban con el menor dos (2) domingos al mes, arreglo al cual la señora Ocasio Agosto expresó no oponerse. Señaló que, el Tribunal solo puede interferir con el ejercicio del derecho que ostenta la madre y/o padre con patria potestad sobre con quién se relaciona el menor, cuando se demuestra la existencia de intereses apremiantes mediante prueba clara, robusta y convincente. De ser así, y el Tribunal adjudicar derecho de visita a los abuelos, esbozó que le corresponde a la madre y/o padre con patria potestad determinar cómo se planifica el tiempo, el lugar y la forma en que se darán las relaciones autorizadas por el Tribunal. Por consiguiente, solicitó que se detuviera el referido a la Unidad Social y se mantuvieran las relaciones como hasta ese momento, y se opuso a la ampliación de las relaciones de los abuelos con el menor.

El 4 de octubre de 2023, la recurrida presentó una *Réplica a Moción Urgente a Solicitud de que se Detenga Informe Social*.[8] Expuso que, el 30 de agosto de 2023, fue entrevistada por la trabajadora social. Ese mismo día, fue entrevistado también el recurrido y la madre del menor. Adujo que los abuelos tenían un derecho a compartir y relacionarse con su nieto, toda vez que es el único

---

[5] *Id.,* a la pág. 26.
[6] *Id.,* a la pág. 26.
[7] *Id.,* a las págs. 11-14.
[8] *Id.,* a las págs. 19-22.

vínculo que le queda de su hijo fallecido. Citaron como fundamento el Artículo 152-A del derogado Código Civil de 1930.[9] Por tanto, solicitaron que el TPI continuara con el referido a la Unidad Social para que se establecieran relaciones entre los abuelos y el menor de forma permanente, que consistiera en que el menor pernoctara con su abuela durante fines de semana alternos.

En respuesta, el 6 de octubre de 2023, notificada el 10 de octubre de 2023, el TPI emitió una *Orden* mediante la cual determinó que se continuaría con el referido a la Unidad Social.[10]

Insatisfecha con lo resuelto por el foro primario, el 23 de octubre de 2023, la señora Ocasio Agosto presentó una *Moción Solicitando Reconsideración y Determinaciones de Hechos y Derechos.*[11] Expuso que, bajo el ordenamiento vigente, la parte recurrida no albergaba derecho alguno de visitas al menor. Señaló que, el derecho de visitas dejó de existir con la entrada en vigor del Código Civil de 2020.[12] Además, añadió que el nuevo marco jurídico le otorga la facultad a la madre y/o padre con patria potestad de determinar con quién y cuándo se relaciona el menor. Solicitó que, del TPI sostener la determinación del 10 de octubre de 2023, se proveyeran determinaciones de hecho y de derecho sobre la misma. El 25 de octubre de 2023, notificada el 27 de octubre de 2023, el TPI emitió una *Orden* declarando No Ha Lugar la Moción de Reconsideración.[13]

Así las cosas, luego de varios incidentes innecesarios pormenorizar, el 22 de noviembre de 2023, se rindió el Informe Social.[14]

---

[9] 31 LPRA § 591a, Art. 152A.
[10] Apéndice de la peticionaria, a la pág. 24.
[11] *Id.,* a las págs. 2-10.
[12] Ley Núm. 55 de 1 de junio de 2020, según enmendado, mejor conocido como "Código Civil de Puerto Rico" de 2020.
[13] Apéndice de la peticionaria, a la pág. 1.
[14] Señalamos que, al momento, el Informe Social no ha sido considerado como prueba documental admitida en este caso.

Empero, cinco (5) días más tarde, el 27 de noviembre de 2023, la peticionaria presentó un primer recurso de *Certiorari* ante esta Curia,[15] tras su inconformidad con la *Orden* emitida el 25 de octubre de 2023, y notificada el 27 de octubre de 2023, en la cual el TPI declaró No Ha Lugar *Moción Solicitando Reconsideración y Determinaciones de Hechos y Derechos.*

En dicho *primer* recurso de *Certiorari,* la madre del menor solicitó que se revocara la determinación del TPI en la cual se ordenó la continuación de los procesos ante la Unidad Social. El 28 de noviembre de 2023, este Panel emitió y notificó una *Resolución* mediante la cual denegó la expedición del auto de *Certiorari.* [16]

Por su parte, el 1 de diciembre de 2023, la recurrida presentó *Moción en Solicitud de Autorización para que se Notifique Informe Social.*[17]   En respuesta, el 11 de diciembre de 2023, el TPI emitió y notificó una *Orden* a la cual anejó el Informe Social.[18]  En la referida *Orden,* el foro primario concedió término a las partes para presentar su posición en torno al informe social. Dispuso, además, que, de determinar impugnar el Informe Social, indicaran el nombre y cualificaciones del perito a contratar, para lo cual también concedió término. En su *Orden,* el TPI advirtió a las partes que, de no comparecer, se podía acoger las recomendaciones y resolver de conformidad.[19] Las partes presentaron sus posturas en torno al Informe Social.

Por un lado, el 26 de diciembre de 2023, la recurrida presentó una *Moción Informativa y en Cumplimiento de Orden,* mediante la cual se allanó a las recomendaciones del Informe Social y solicitó que se emitiera dictamen de conformidad.[20] Conviene señalar, que,

---

[15] Apéndice de la peticionaria, a las págs. 45-59. En el alfanumérico KLCE202301323.
[16] *Id.,* a las págs. 66-73.
[17] *Id.,* a las págs. 74-76.
[18] *Id.,* a las págs. 83-110.
[19] *Id.,* a la pág. 84.
[20] *Id.,* a la pág. 112.

conforme se desprende de los autos, las recomendaciones del informe social fueron las siguientes:

- Que se establezcan relaciones abuelos filiales los domingos alternos. La señora Carolyn Ocasio, madre del menor, entregará al menor D.M.O. a la señora Grisel Olmeda y el señor Jesús Madrea en el Walgreen[s] de Las Piedras a las 11:00 a.m. y recogerá al menor a las 6:00 p.m.
- El menor compartirá con los abuelos paternos el 6 de enero de 2024 desde las 12:00 p.m. La señora Carolyn Ocasio, madre del menor, entregará al menor a los abuelos paternos en el Walgreen[s] de Las Piedras.[21]

Por el otro lado, el 22 de enero de 2024, la madre del menor presentó una *Moción en Cumplimiento de Orden*.[22] En síntesis, expuso que, no oponerse a las relaciones de los abuelos con el menor como se estaban llevando a cabo, pero se opuso a que las mismas se ampliaran. Adujo que, aunque el Informe Social recomendaba que las relaciones se llevaran a cabo tal y cual, hasta el momento, tanto esta como el menor se "sienten sometidos a horarios y días que el mismo menor, en ocasiones, manifiesta no querer visitar a sus abuelos y cuestiona la imposición".[23] Expuso allanarse temporeramente a las recomendaciones de la Unidad Social en cuanto a mantener las relaciones entre los abuelos y el menor tal y como estaban, pero que no deseaba ceñirse a una recomendación definitiva hasta que el Alto Foro se expresara.

Subsiguientemente, el 24 de enero de 2024, notificadas el 29 de enero de 2024, el TPI emitió dos (2) Resoluciones, veamos:

En una *Resolución*, el foro primario dispuso lo siguiente:

- Se acogerá el informe social.
- Proceso ante el Supremo no paraliza los procesos ante este Tribunal.
- Se dicta [R]esolución de conformidad en la que se hace constar que se continuarán relaciones con abuelos según fijadas.[24]

---

[21] *Id.,* a la pág. 110.
[22] *Id.,* a las págs. 123-125.
[23] *Id.,* a la pág. 124.
[24] *Id.,* a la pág. 127.

En la otra *Resolución,* [25] el TPI dispuso lo siguiente:

Se dicta resolución acogiendo informe social presentado el 22 de noviembre de 2023.

- Se continuarán las relaciones abuelo filiales los domingos alternos. La Sra. Carolyn Ocasio, madre del menor entregará al menor D.M.O. a la Sra. Grisel Olmeda y [a]l Sr. Jesús Olmeda, abuelos paternos, en el Walgreens de Las Piedras a las 11:00 a.m. y recogerá al menor a las 6:00 p.m.
- El menor compartirá con los abuelos paternos el 6 de enero de 2024 desde las 12:00 a.m. hasta las 6:00 p.m. La señora Carolyn Ocasio, madre del menor entregará al menor a los abuelos paternos en el Walgreens de Las Piedras.[26]

Precisa destacar que, ante la inconformidad con el curso decisorio de esta Curia en cuanto al *primer* recurso de Certiorari instado, la madre del menor acudió en revisión al Alto Foro,[27] el cual denegó de igual forma la expedición del auto de *Certiorari,* mediante *Resolución* del 2 de febrero de 2024.[28] Nótese que, era a esta determinación que se refería la madre del menor en el párrafo que antecede, cuando indicó que no deseaba ceñirse a una recomendación definitiva hasta que el Alto Foro se expresara.

Regresando a los trámites del TPI, recordemos que el foro primario determinó acoger el Informe Social rendido, por lo que dispuso que las relaciones entre los abuelos y su nieto continuarían tal y cual, establecidas en el año 2020, pero incluyó una fecha adicional, el 6 de enero de 2024.

Inconforme con la determinación del TPI, el 28 de febrero de 2024, la peticionaria presento un *segundo* recurso de *Certiorari,* el cual se encuentra ante ante nuestra consideración. En su recurso la peticionaria esbozó los siguientes dos (2) errores:

**Primer Error:** Erró el Tribunal de Primera Instancia Sala de Humacao, al emitir una Resolución acogiendo el Informe Social de 22 de noviembre de 2023, concediendo relaciones Abuelo-Nieto y enmarcado en el Código Civil de 1930, pasando por alto las disposiciones

---

[25] *Id.,* a las págs. 128-129.
[26] *Id.,* a la pág. 129.
[27] En el alfanumérico CC-2023-0795.
[28] Apéndice de la peticionaria, a las págs. 132-133.

aplicables del Código Civil vigente en su artículo 619[,] 31 L.P.R.A. § 7332, que faculta con jerarquía constitucional el derecho de los padres con patria potestad a determinar cómo y cuándo su hijo se relaciona con sus parientes.

**Segundo Error:** Erró el Tribunal de Primera Instancia Sala de Humacao, al emitir una Resolución acogiendo el Informe Social de 22 de noviembre de 2023, concediendo relaciones Abuelo-Nieto, contrario a lo establecido en Troxel v. Granvile, 530 EE. UU. 57, 77 (2004).

## II

### A. Expedición del Recurso de *Certiorari*

Los recursos de *Certiorari* presentados ante el Tribunal de Apelaciones deben ser examinados en principio bajo la Regla 52.1 de las Reglas de Procedimiento Civil.[29] Esta Regla limita la autoridad y el alcance de la facultad revisora de este Tribunal mediante el recurso de *Certiorari* sobre órdenes y resoluciones dictadas por los Tribunales de Primera Instancia. La Regla lee como sigue:

> [...]
> El recurso de Certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de Certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.[30]
> [...]

Por su parte, la Regla 52.2 (b) dispone sobre los términos y efectos de la presentación de un recurso de *Certiorari* que:

> [...]
> (b) *Recurso de "certiorari"* [...]

---

[29] 32 LPRA Ap. V, R. 52.1.
[30] *Id.*

> Los recursos de *certiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia o al Tribunal Supremo para revisar las demás sentencias o resoluciones finales del Tribunal de Apelaciones en recursos discrecionales o para revisar cualquier resolución interlocutoria del Tribunal de Apelaciones deberán presentarse dentro del término de treinta (30) días contados desde la fecha de notificación de la resolución u orden recurrida. El término aquí dispuesto es de cumplimiento estricto, prorrogable sólo cuando medien circunstancias especiales debidamente sustentadas en la solicitud de *certiorari*.[31]
> [...]

El recurso de *Certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[32] A diferencia del recurso de apelación, el auto de *Certiorari* es de carácter discrecional.[33] Expedir el recurso "no procede cuando existe otro recurso legal que protege rápida y eficazmente los derechos de la parte peticionaria".[34] Conviene desatacar que la discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[35] A esos efectos, se ha considerado que "la discreción se nutre de un juicio racional apoyado en la razonabilidad y en un sentido llano de justicia y no es función al antojo o voluntad de uno, sin tasa ni limitación alguna".[36] La Regla 40 del Reglamento del Tribunal de Apelaciones[37], esboza los criterios que el Tribunal deberá considerar para expedir un auto de *Certiorari*, como sigue:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

---

[31] 32 LPRA Ap. V, R. 52.2 (b).
[32] *800 Ponce de León, Corp. v. American International Insurance Company of Puerto Rico,* 205 DPR 163, 174 (2020).
[33] *Rivera Figueroa v. Joes's European Shop,* 183 DPR 580, 596 (2011).
[34] *Id.*
[35] *Mun. de Caguas v. JRO Construction,* 201 DPR 703, 712 (2019); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013).
[36] *Id.*
[37] 4 LPRA Ap. XXII-B, R.40.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición el auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo de Puerto Rico (en adelante, Tribunal Supremo) ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[38] Quiérase decir, no hemos de interferir con los Tribunales de Primera Instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción; o, (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[39]

### B. Relaciones Abuelo-Nieto, Código Civil de Puerto Rico 1930 v. 2020

El Título VIII del Código Civil de 1930 (derogado) aborda lo relativo a la patria potestad. En dicho Código, la patria potestad sobre los hijos corresponderá a uno solo de los padres cuando, entre otras razones, el otro haya muerto.[40] El derecho de las relaciones abuelo filiales fue reconocido a través de la promulgación de la Ley Núm. 182 de 22 de diciembre de1997, la cual enmendó el Artículo 152A. En lo aquí pertinente, luego de la referida enmienda, dicho Código disponía lo siguiente respecto al derecho de los abuelos y de los tíos:

---

[38] *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 208 (1994).
[39] *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).
[40] 31 LPRA § 591, Art. 152.

> **Luego de la disolución del núcleo familiar, ya sea por la muerte de uno de los padres** o divorcio, separación o nulidad del matrimonio, **no podrán los padres** o tutor **que ejerza la patria potestad y custodia sobre un menor no emancipado, impedir sin justa causa que éste se relacione con sus abuelos** o con sus tíos.
>
> [...]
>
> **En caso de oposición por parte del padre o madre** o tutor **que ejerza la patria potestad y custodia sobre dicho menor no emancipado se reconoce legitimación jurídica a los abuelos** y a los tíos **para ser oído ante el juez quien decidirá lo procedente tomando en consideración las circunstancias particulares de cada caso y los intereses y bienestar del menor**.[41] (Énfasis suplido).

Estando en vigor el Código Civil de 1930, el Tribunal Supremo expresó que:

> El Prof. Raúl Serrano Geyls también se ha expresado de forma compatible con lo que hoy resolvemos al señalar que el Art. 152A del Código Civil, *supra,* es constitucional, pero que, "al aplicarl[o], **nuestros jueces están obligados a seguir las directrices establecidas en el caso Troxel, ya que se trata de un derecho fundamental**".[42] (Énfasis suplido).
>
> [...]
>
> A la luz de la decisión de *Troxel v. Granville,* supra, *los tribunales deben darle una consideración especial a la decisión de los padres de rechazar las relaciones abuelo-filiales.* Esto significa que no debe imponérseles a los padres la carga de probar que las relaciones solicitadas por los abuelos serán perjudiciales para el menor. *Corresponde a los abuelos solicitantes el peso de la prueba para demostrar que tienen la aptitud para relacionarse con sus nietos a la luz de los criterios antes expuestos.[43]*

El Artículo 152A del Código Civil de 1930, fue nombrado como el "Derecho de visita de otros parientes" y enumerado como 619 en el Código Civil de 2020,[44] código vigente a partir del 28 de noviembre de 2020. A la luz de lo anterior, respecto al derecho de visita de otros parientes se dispone que:

> **Corresponde a los progenitores que ejercen la patria potestad decidir con qué personas dentro o fuera del núcleo familiar se relaciona su hijo. Por ser un derecho fundamental, la determinación de los progenitores a estos efectos goza de una presunción de corrección.**

---

[41] 31 LPRA § 591a, Art. 152A.
[42] *Rexach v. Ramírez Velez,* 162 D.P.R. 130, 159 (2004), citando a R. Serrano Geyls, *Derecho constitucional de Estados Unidos y Puerto Rico,* San Juan, Ed. U.I.A.P.R. 1997, Vol. I, pág. 1321.
[43] *Rexach v. Ramírez Velez, Id.,* 161.
[44] 31 LPRA § 7332, Art. 619.

**El tribunal solo puede interferir con el ejercicio de ese derecho cuando se demuestra la existencia de intereses apremiantes mediante prueba robusta, clara y convincente.**

**Si el tribunal adjudica el derecho de visita, los progenitores determinarán la planificación del tiempo, el lugar y el modo de las relaciones autorizadas, siempre buscando el interés óptimo de los menores.**

A la hora de determinar el derecho de visita, el tribunal deberá tomar en consideración entre otras cosas, si esas relaciones familiares son importantes para el desarrollo integral del menor de edad, y si este ha estado bajo el cuidado temporal de otras personas.[45] (Énfasis suplido).

Por su parte, el Título VIII del precitado Código Civil de 2020 (vigente) aborda lo relativo a la patria potestad. A tales efectos, se define la patria potestad es el conjunto de deberes y derechos que corresponden a los progenitores sobre la persona y los bienes de los hijos, desde que estos nacen hasta que alcanzan la mayoría de edad u obtienen su emancipación.[46] Ahora bien, la titularidad y el ejercicio de la patria potestad corresponden a uno solo de los progenitores cuando, entre otras razones, el otro progenitor ha muerto o se presume su muerte.[47]

**III**

Habida cuenta de que el recurso ante nuestra consideración se trata de un *Certiorari*, este tribunal revisor debe determinar, como cuestión de umbral, si procede su expedición. En su recurso, la peticionaria esboza que el TPI erró al emitir una *Resolución* acogiendo el Informe Social de 22 de noviembre de 2023, concediendo relaciones entre los abuelos y su hijo menor de edad (nieto de los recurridos) y enmarcado en el Código Civil de 1930: (i) pasando por alto las disposiciones aplicables del Código Civil vigente en su artículo 619 31 LPRA § 7332,[48] que faculta con jerarquía constitucional el derecho de los padres con patria potestad a

---

[45] 31 LPRA § 7332, Art. 619.
[46] 31 LPRA § 7241, Art. 589.
[47] 31 LPRA § 7256, Art. 597.
[48] 31 LPRA § 7332, Art. 619.

determinar cómo y cuándo su hijo se relaciona con sus parientes; y, (ii) contrario a lo establecido en *Troxel v. Granville*, 530 US 57, 77 (2004).[49]

Como es sabido, un tribunal apelativo no intervendrá con el ejercicio de la discreción de los Tribunales de Primera Instancia, salvo que se demuestre que dicho tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[50] Puntualizamos, que el *Certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior.[51] A esos efectos, la naturaleza discrecional del recurso de *Certiorari* queda enmarcada dentro de la normativa que le concede deferencia de las actuaciones de los Tribunales de Primera Instancia, de cuyas determinaciones se presume su corrección. Ahora bien, la expedición del recurso de *Certiorari* al amparo de la Regla 52.1 de las Reglas de Procedimiento Civil[52], no opera en el vacío; tiene que anclarse en una de las razones de peso que establece la Regla 40 del Reglamento del Tribunal de Apelaciones.[53] A tenor, luego de examinar la totalidad del expediente ante nos hemos acordado que en este caso, al amparo de la precitada Regla 52.1, tratándose de un caso sobre relaciones de familia y luego de coincidir en que esta encuentra apoyo en la Regla 40 del Tribunal de Apelaciones, hemos acordado expedir el auto de *Certiorari*. Apuntamos que, por guardar relación los errores esgrimidos, procederemos a discutirlos en conjunto.

Entre las partes en este caso existe un decreto en el cual se establecieron unos derechos de visita entre los abuelos paternos y el hijo menor de edad de la peticionaria. Según hemos expuesto, el

---

[49] *Troxel v. Granvile*, 530 US 57, 77 (2004).
[50] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).
[51] *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).
[52] 32 LPRA Ap. V, R. 52.1.
[53] 4 LPRA Ap. XXII-B, R.40.

menor es el nieto de los recurridos y huérfano por la vía paterna. No existe controversia en que el primer decreto mediante el cual se estableció el derecho de visita fue emitido bajo el derogado Código Civil de 1930. Empero, luego de entrar en vigor el Código Civil de 2020, los abuelos peticionaron al foro primario una ampliación de su derecho de visita para que fuese establecido en fines de semanas alternos con pernocte. Fue ante esta solicitud que el TPI, en su ejercicio discrecional activó mediante Orden, la intervención de la Unidad Social y producto de su intervención se rindió un Informe Social.

Conforme se desprende de los autos, dicho Informe Social recomendó mantener la misma frecuencia y tiempo en torno al derecho de visita, entiéndase, domingos alternos en un horario de 11:00 am a 6:00 pm, pero añadió una fecha adicional, el pasado 6 de enero de 2024. Rendido el Informe Social, la primera instancia judicial lo notificó a las partes y les requirió presentar sus posturas. Los abuelos paternos informaron que se allanaban a lo recomendado por la Unidad Social, mientras que **la madre expresó allanarse, pero no de forma definitiva**. De ahí, sin más, el TPI emitió la *Resolución* recurrida. El resultado de dicha *Resolución* fue que, existiendo controversias de hechos y de derecho, sin la celebración de una vista evidenciaria emitió un dictamen **permanente** sobre el derecho de visita entre los abuelos paternos y el menor. Alzó la madre del menor que el TPI debió considerar las disposiciones del Código Civil de 2020, y la jurisprudencia interpretativa, así como que adujo que existían controversias fácticas y la jurisprudencia interpretativa en este tipo de controversia. **Tiene razón.**

Es de ver que el Código Civil de 2020, en su Artículo 619 otorga a los padres con patria potestad – *en este caso la madre es quien único ostenta la patria potestad sobre el menor* - el derecho se

decidir con qué personas se relacionan sus hijos. En las controversias como la de autos, conforme a la normativa vigente, para que el Tribunal pueda intervenir y adjudicar un derecho de visita tiene que demostrarse la existencia de intereses apremiantes mediante prueba robusta, clara y convincente. Ahora bien, aun de determinarse por el Tribunal un derecho de visita, el Artículo dispone que los progenitores determinarán la planificación del tiempo, el lugar y el modo de las relaciones autorizadas, siempre buscando el interés óptimo de los menores. Claro está, es al Tribunal a quien le corresponde dilucidar este tipo de controversia, de existir. Tal es el caso de autos.

Hasta el momento, el Tribunal Supremo no ha tenido la ocasión de dar una interpretación al nuevo artículo del Código Civil relacionado al derecho de visita de otros parientes. Es de ver, que existen diferencias significativas entre el Artículo 152A del Código Civil de 1930, y el Artículo 169 del Código Civil de 2020. El Código Civil derogado requería que los progenitores mostraran justa causa para prohibir las relaciones entre los abuelos y sus nietos; no obstante, el nuevo Código Civil establece una presunción de corrección a favor de los progenitores al decidir con qué personas los hijos menores de edad podrán relacionarse. Resulta claro, además, que, ante los cambios en el marco jurídico, el estándar de prueba impuesto a los parientes es más alto. Les corresponde a los abuelos demostrar con prueba clara robusta y convincente que el derecho de visita contribuye al interés optimo del menor y a su desarrollo integral.

Visto lo anterior, no existe duda que, al examinar la *Resolución* recurrida, podemos concluir que el TPI pasó por alto, el que la madre del menor **no se allanó sin reserva alguna** a las recomendaciones del Informe Social y que el foro primario no ha atendido sus reclamos amparados en el Artículo 619 del Código Civil

de 2020. Lo que sí nos ha quedado claro es que la madre del menor se allanó de forma **provisional** a las recomendaciones del Informe Social el cual, según hemos expresado, mantuvo el mismo derecho de visita establecido desde el año 2020, salvo por una fecha adicional, entiéndase el 6 de enero de 2024 – *fecha única* – la cual ya pasó. Visto lo anterior, es claro que, aun cuando los abuelos se allanaron a que el derecho de visita se mantuviese tal y cual, establecido, el foro primario pretirió el atender los planteamientos de derecho esbozados por la madre del menor, así como las controversias de hechos esbozadas que surgen de los autos, mediante la celebración de una vista evidenciaria.

Luego de examinar la totalidad del expediente ante nuestra consideración incluyendo las posiciones de partes, somos del criterio de que no abusó de su discreción el foro primario al acoger las recomendaciones del Informe Social. Lo anterior, puesto a que, sin ánimos de ser reiterativos, insistimos en que los abuelos se allanaron a las recomendaciones del Informe Social mientras que la peticionaria también se allanó, pero de forma provisional.

Cónsono a lo anterior, el curso decisorio del foro primario provocó que las relaciones jurídicas entre las partes sean las mismas que tenían previo a que se emitiera la *Resolución* recurrida, entiéndase, mantener el dictamen sobre relaciones abuelo nieto establecidas desde el año 2020. Lo anterior, puesto a que la única variación observada fue en cuanto a la recomendación sobre establecer un derecho de visita para el **pasado** 6 de enero de 2024.

Ahora bien, visto que la recurrente en su escrito fijando posición en torno a las recomendaciones del informe social expresó inequívocamente que no se oponía a lo recomendado, pero que no fuese de manera definitiva, vemos que la controversia sobre las relaciones abuelo nieto sigue latente y que le corresponde al foro primario dilucidar y resolver de manera permanente la misma,

mediante la celebración de una vista evidenciaria. Ahí, estribó el error del tribunal recurrido al emitir un dictamen permanente sin haberle garantizado el debido proceso de ley a las partes y darles su día en corte, luego de que, específicamente, la madre mostrara su inconformidad. En otras palabras, el foro primario tiene pendiente atender las controversias de hechos y de derecho presentadas por la madre del menor.

A tenor, **confirmamos** la *Resolución* recurrida, pero **modificamos** la misma a los fines de determinar que la decisión del TPI sobre acoger las recomendaciones del Informe Social se convierte en una **provisional**. De esta forma, el foro recurrido podrá garantizar a todas las partes su debido proceso de ley mediante la correspondiente **vista evidenciaria** a la brevedad posible. En consecuencia, devolvemos el caso al foro primario para la calendarización de los procesos y la celebración de una vista evidenciaria. Producto de la vista que en su día se celebre, el foro primario deberá emitir la correspondiente Resolución fundamentada a tenor con el derecho aplicable.

**IV**

Por los fundamentos que anteceden, se *expide* el auto de *Certiorari*, se *modifica* la *Resolución* recurrida y así modificada, se *confirma*. Se devuelve el caso al Tribunal de Primera Instancia para que a la brevedad posible calendarice y celebre la correspondiente vista evidenciaria, cónsono a lo dispuesto en esta Sentencia.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones